UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>       Plaintiff,<br><br>vs.<br><br>TELEFONAKTIEBOLAGET LM ERICSSON,<br><br>       Defendant. | Case No. 1:19-cv-11214-GHW<br><br>**CONSENT** |

## CONSENT OF DEFENDANT TELEFONAKTIEBOLAGET LM ERICSSON

1.      Defendant Telefonaktiebolaget LM Ericsson ("Defendant" or "Ericsson") waives service of a summons and the Complaint in this action, enters a general appearance, and admits to the Court's jurisdiction over Defendant and over the subject matter of this action.

2.      Defendant has entered into a Deferred-Prosecution Agreement that acknowledges responsibility for criminal conduct relating to certain matters alleged in the complaint in this action.  Specifically, in *United States v. Telefonaktiebolaget LM Ericsson.*, Case No. 19 Cr. 884 (AJN), (filed in the Southern District of New York), Defendant will acknowledge responsibility for: (1) conspiracy to violate the anti-bribery provisions of the Foreign Corrupt Practices Act of 1977 ("FCPA"), as amended, Title 15, United States Code, Sections 78dd-1; and (2) conspiracy to violate the books and records and internal controls provisions of the FCPA, as amended, United States Code, Sections 78m(b)(2)(A), 78m(b)(2)(B), and 78m(b)(5).  Defendant will acknowledge the facts set out in the Deferred-Prosecution Agreement.  In addition, in *United States v. Ericsson Egypt Ltd.*, Case No. S1 19 Cr. 884 (AJN), Defendant's subsidiary Ericsson Egypt Ltd, will plead guilty to one count of conspiracy to violate the anti-bribery provisions of the FCPA as amended, Title 15, United States Code, Sections 78dd-1.  This Consent shall remain in full force and effect regardless of the existence or outcome of any further proceedings in *United States v. Telefonaktiebolaget LM*

1

3.      Defendant hereby consents to the entry of the final Judgment in the form attached hereto (the "Final Judgment") and incorporated by reference herein, which among other things:

(a)     Permanently restrains and enjoins Defendant from violation of Sections 30A, 13(b)(2)(A), and 13(b)(2)(B) of the Securities Exchange Act of 1934 [15 U.S.C. §§ 78dd-l, 78m(b)(2)(A), and 78m(b)(2)(B)];

(b)     Orders Defendant to pay disgorgement of $458,380,000, representing profits gained as a result of the conduct alleged in the Complaint, together with prejudgment interest thereon in the amount of $81,540,000, for a total of $539,920,000; and

(c)     Orders Defendant, within ninety (90) days of the entry of the Final Judgment, to retain an independent monitor pursuant to paragraphs 4 through 35 of this Consent.

*Retention of Monitor and Term of Engagement*

4.      Defendant shall engage an independent monitor (the "Monitor") not unacceptable to the Commission staff within ninety (90) days of the entry of the Final Judgment. The Monitor shall have, at a minimum, the following qualifications: (i) demonstrated expertise with respect to the Foreign Corrupt Practices Act ("FCPA") and other applicable anti-corruption laws, including experience counseling on FCPA issues; (ii) experience designing and/or reviewing corporate compliance policies, procedures, and internal accounting controls, including FCPA and anti-corruption policies, procedures, and internal accounting controls; (iii) the ability to access and deploy resources as necessary to discharge the Monitor's duties as described in the Consent; and (iv) sufficient independence from Defendant to ensure effective and impartial performance of the Monitor's duties as described in the Consent. The Commission staff may extend Defendant's time period to retain the Monitor, in its sole discretion. If the Monitor resigns or is otherwise unable to fulfill his or her obligations as set out herein, Defendant shall within forty-five (45) days retain a successor Monitor that has

2

the same minimum qualifications as the original monitor and that is not unacceptable to the Commission staff.

5.      Defendant shall retain the Monitor for a period of not less than thirty-six (36) months, unless the Commission staff finds, in its sole discretion, that there exists a change in circumstances sufficient to eliminate the need for the Monitor, in which case the monitorship may be terminated early (the "Monitorship"). The term of the Monitorship can be extended for an additional twelve (12) months, to a total of forty-eight (48) months from the date the Monitor is retained.  The term of the Monitorship can be extended as set forth below.

6.      During the Monitorship and for a period of two years from conclusion of the Monitorship, neither Defendant nor any of its then-current or former affiliates, subsidiaries, directors, officers, employees, or agents acting in their capacity as such shall enter into, or discuss the possibility of, any employment, consultant, attorney-client, auditing, or other professional relationship with the Monitor.

*Defendant's Obligations*

7.      Defendant shall cooperate fully with the Monitor, and provide the Monitor with access to all non-privileged information, documents, records, facilities, and employees as reasonably requested by the Monitor; such access shall be provided consistent with Defendant's and the Monitor's obligations under applicable local laws and regulations, including, but not limited to, applicable data privacy and national security laws and regulations. Defendant shall use its best efforts, to the extent reasonably requested, to provide the Monitor with access to Defendant's former employees, third party vendors, agents, and consultants.

8.      The parties agree that no attorney-client relationship shall be formed between Defendant and the Monitor. In the event that Defendant seeks to withhold from the Monitor access to information, documents, records, facilities, current or former employees of Defendant, its third-party vendors, agents, or consultants that may be subject to a claim of attorney-client privilege or to the attorney work-product doctrine, or where Defendant reasonably believes production would otherwise be inconsistent with applicable law, Defendant shall work

3

cooperatively with the Monitor to resolve the matter to the satisfaction of the Monitor. If, during the Monitorship, the Monitor believes that Defendant is unreasonably withholding access on the basis of a claim of attorney-client privilege, attorney work-product doctrine, or other asserted applicable law, the Monitor shall promptly notify the Commission staff.

9.     Any disclosure by Defendant to the Monitor concerning potential corrupt payments, false books and records, and/or internal accounting control issues shall not relieve Defendant of any otherwise applicable obligation to truthfully disclose such matters to the Commission staff.

*Monitor's Mandate*

10.     The Monitor shall evaluate the effectiveness of the internal accounting controls, recordkeeping, and financial reporting policies and procedures of Defendant as they relate to Defendant's current and ongoing compliance with the anti-bribery, books and records, and internal accounting controls provisions of the FCPA and other applicable anti-corruption laws (the "anti-corruption laws"), and make recommendations reasonably designed to improve the effectiveness of Defendant's internal accounting controls and corporate compliance program (the "Mandate"). This Mandate shall include an assessment of the Board of Directors' and senior management's commitment to, and effective implementation of, the corporate compliance program. In carrying out the Mandate, to the extent appropriate under the circumstances, the Monitor may coordinate with Defendant personnel, including in-house counsel, compliance personnel, and internal auditors. The Monitor may rely on the product of Defendant's processes, such as the results of studies, reviews, sampling and testing methodologies, audits, and analyses conducted by or on behalf of Defendant, as well as Defendant's internal resources (e.g., legal, compliance, and internal audit), which can assist the Monitor in carrying out the Mandate.

11.     During the Monitorship, the Monitor shall conduct an initial review and two (2) follow-up reviews and prepare an initial report and two (2) follow-up reports, and issue a Certification Report if appropriate, as described below.

*Initial Review and Report*

12.     Promptly upon being retained, the Monitor shall prepare a written work plan, which shall be submitted to Defendant and the Commission staff for comment no later than sixty (60) calendar days after being retained.

13.     In order to conduct an effective initial review and to understand fully any existing deficiencies in Defendant's internal accounting controls and corporate compliance program, the Monitor's work plan shall include such steps as are reasonably necessary to understand Defendant's business and its global anti-corruption risks. The steps shall include:

     (a)     inspection of relevant documents, including the internal accounting controls, recordkeeping, and financial reporting policies and procedures as they relate to Defendant's compliance with the books and records, internal accounting controls and anti-bribery provisions of anti-corruption laws;

     (b)     onsite observation of selected systems and procedures comprising Defendant's corporate compliance program, including anti-corruption compliance procedures, internal accounting controls, recordkeeping, due diligence, and internal audit procedures, including at sample sites;

     (c)     meetings with, and interviews of, as relevant, Defendant's employees, officers, directors, and, where appropriate and feasible, its third-party vendors, agents, or consultants and other persons at mutually convenient times and places; and

     (d)     risk-based analyses, studies, and testing of Defendant's corporate compliance program.

14.     The Monitor may take steps as reasonably necessary to develop an understanding of the facts and circumstances surrounding prior violations of law that gave rise to this action, but shall not conduct his or her own inquiry into those historical events.

15.     After receiving the initial work plan, Defendant shall provide any comments concerning the initial work plan within thirty (30) calendar days to the Monitor and

Commission staff. Any disputes between Defendant and the Monitor with respect to the initial work plan shall be decided by the Commission staff in its sole discretion. Following comments by Defendant and Commission staff, the Monitor will have fifteen (15) calendar days to make revisions to the initial work plan.

16.     The initial review shall commence no later than one-hundred twenty (120) calendar days from the date of the engagement of the Monitor (unless otherwise agreed by Defendant, the Monitor, and the Commission staff). The Monitor shall issue a written report within one- hundred eighty (180) calendar days of commencing the initial review, setting forth the Monitor's assessment and, if necessary, making recommendations reasonably designed to improve the effectiveness of Defendant's internal accounting controls and corporate compliance program as they relate to Defendant's compliance with the anti-corruption laws. The Monitor should consult with Defendant concerning his or her findings and recommendations on an ongoing basis and should consider Defendant's comments and input to the extent the Monitor deems appropriate. The Monitor should share a draft of his or her report with Defendant and Commission staff prior to finalizing them. The Monitor shall provide the report to the Board of Directors of Defendant and contemporaneously transmit a copy to Commission staff.

17.     Within one-hundred eighty (180) calendar days after receiving the Monitor's initial report, Defendant shall adopt and implement all recommendations in the report, provided, however, that as to any recommendation that Defendant considers unduly burdensome, impractical, or costly, or inconsistent with applicable law or regulation, Defendant need not adopt that recommendation at that time, but may submit in writing to the Monitor and the Commission staff within sixty (60) calendar days of receiving the report, an alternative policy, procedure, or system designed to achieve the same objective or purpose.

18.     In the event Defendant and the Monitor are unable to agree on an acceptable alternative proposal within forty-five (45) calendar days after the Defendant serves the written notice, Defendant shall promptly consult with the Commission staff. Any disputes between Defendant and the Monitor with respect to the recommendations shall be decided by the

Commission staff in its sole discretion. The Commission staff will consider the Monitor's recommendation and Defendant's reasons for not adopting the recommendation in determining whether Defendant has fully complied with its obligations. Pending such determination, Defendant shall not be required to implement any contested recommendation(s).

19.     With respect to any recommendation that the Monitor determines cannot reasonably be implemented within one-hundred eighty (180) calendar days after receiving the report, the Monitor may extend the time period for implementation with prior written approval of the Commission staff.

*First Follow-Up Review*

20.     Within one-hundred fifty (150) calendar days after the issuance of the initial report, the Monitor shall submit a written work plan for the follow-up review to Defendant and Commission staff. Defendant and Commission staff shall provide any comments concerning the work plan within thirty (30) calendar days in writing to the Monitor. Any disputes between Defendant and the Monitor with respect to the written work plan shall be decided by the Commission staff in its sole discretion. Following comments by Defendant and Commission staff, the Monitor will have fifteen (15) calendar days to make revisions to the follow-up work plan.

21.     The follow-up review shall commence no later than one-hundred eighty (180) calendar days after the issuance of the initial report (unless otherwise agreed by Defendant, the Monitor, and the Commission staff). The Monitor shall issue a written follow-up report within one-hundred twenty (120) calendar days of commencing the follow-up review. The follow-up report shall set forth the Monitor's assessment of, and any additional recommendations regarding, Defendant's internal accounting controls and corporate compliance program as they relate to Defendant's compliance with the anti-corruption laws; the Monitor's assessment of the implementation by Defendant of any recommendations made in the initial report; and the Monitor's assessment of the commitment of Defendant's Board of Directors and senior management to compliance with anti-corruption laws.

7

22.     Within one-hundred twenty (120) calendar days after receiving the Monitor's follow-up report, Defendant shall adopt and implement all recommendations in the report, provided, however, that as to any recommendation that Defendant considers unduly burdensome, impractical, or costly, or inconsistent with applicable law or regulation, Defendant need not adopt that recommendation at that time, but may submit in writing to the Monitor and the Commission staff within thirty (30) calendar days of receiving the report, an alternative policy, procedure, or system designed to achieve the same objective or purpose.

23.     In the event Defendant and the Monitor are unable to agree on an acceptable alternative proposal within thirty (30) calendar days after the Defendant serves the written notice, Defendant shall promptly consult with the Commission staff. Any disputes between Defendant and the Monitor with respect to the recommendations shall be decided by the Commission staff in its sole discretion. The Commission staff shall consider the Monitor's recommendation and Defendant's reasons for not adopting the recommendation in determining whether Defendant has fully complied with its obligations. Pending such determination, Defendant shall not be required to implement any contested recommendation(s).

*Second Follow-Up Review*

24.     Within ninety (90) calendar days after the issuance of the follow-up report, the Monitor shall submit a written work plan for the second follow-up review to Defendant and Commission staff. Defendant and Commission staff shall provide any comments concerning the work plan within thirty (30) calendar days in writing to the Monitor. Any disputes between Defendant and the Monitor with respect to the written work plan shall be decided by the Commission staff in its sole discretion. Following comments by Defendant and Commission staff, the Monitor will have fifteen (15) calendar days to make revisions to the follow-up work plan.

25.     The second follow-up review shall commence no later than one-hundred twenty (120) calendar days after the issuance of the follow-up report (unless otherwise agreed by Defendant, the Monitor, and the Commission staff). The Monitor shall issue a written follow-up

report within one-hundred twenty (120) calendar days of commencing the second follow-up review. The follow-up report shall set forth the Monitor's assessment of, and any additional recommendations regarding, Defendant's internal accounting controls and corporate compliance program as they relate to Defendant's compliance with the anti-corruption laws; the Monitor's assessment of the implementation by Defendant of any recommendations made in the initial report; and the Monitor's assessment of the commitment of Defendant's Board of Directors and senior management to compliance with anti-corruption laws.

26.     Within one-hundred twenty (120) calendar days after receiving the Monitor's follow-up report, Defendant shall adopt and implement all recommendations in the report, provided, however, that as to any recommendation that Defendant considers unduly burdensome, impractical, or costly, or inconsistent with applicable law or regulation, Defendant need not adopt that recommendation at that time, but may submit in writing to the Monitor and the Commission staff within thirty (30) calendar days of receiving the report, an alternative policy, procedure, or system designed to achieve the same objective or purpose.

27.     In the event Defendant and the Monitor are unable to agree on an acceptable alternative proposal within thirty (30) calendar days, Defendant shall promptly consult with the Commission staff. Any disputes between Defendant and the Monitor with respect to the recommendations shall be decided by the Commission staff in its sole discretion. The Commission staff shall consider the Monitor's recommendation and Defendant's reasons for not adopting the recommendation in determining whether Defendant has fully complied with its obligations. Pending such determination, Defendant shall not be required to implement any contested recommendation(s).

28.     Throughout the Monitorship, the Monitor shall disclose to the Commission staff any credible evidence that corrupt or otherwise suspicious transactions occurred, or payments or things of value were offered, promised, made, or authorized by any entity or person within Defendant, or any entity or person working directly or indirectly for or on behalf of Defendant, or that related false books and records may have been maintained by or on behalf of Defendant

or that relevant internal controls were circumvented or were not reasonably designed or implemented. The Monitor shall contemporaneously notify Defendant's General Counsel, Chief Compliance Officer, or Audit Committee for further action unless at the Monitor's discretion he or she believes disclosure to Defendant would be inappropriate under the circumstances. The Monitor shall address in his or her reports the appropriateness of Defendant's response to all improper activities, whether previously disclosed to the Commission staff or not.

*Certification of Compliance*

29.     No later than seventy-five (75) calendar days before the end of the Monitorship term, the Monitor shall certify in writing to the Commission staff that Defendant has adopted and has implemented, or is implementing on an agreed-to schedule, all of the Monitor's recommendations in the initial and follow-up report(s), or the agreed-upon alternatives.

30.     No later than seventy-five (75) calendar days before the end of the Monitorship term, if the Monitor believes that Defendant's corporate compliance program is reasonably designed and implemented to detect and prevent violations of the anti-corruption laws and is functioning effectively, the Monitor shall submit to the Commission staff a written report ("Certification Report") that certifies Defendant's compliance with its corporate compliance obligations under the Final Judgment. The Certification Report shall set forth an assessment of the sustainability of Defendant's remediation efforts. Fourteen (14) calendar days prior to issuing the Certification report, the Monitor shall orally notify the Commission staff whether he or she expects to be able to certify as provided herein.

*Extension of Monitorship*

31.     If, after completing the second follow-up review, the Commission staff concludes that Defendant has not successfully satisfied its obligations under the Monitorship with respect to the Monitor's Mandate, the Monitorship shall be extended, and the Monitor shall commence a third follow-up review within sixty (60) calendar days after the Commission staff concludes that Defendant has not successfully satisfied its compliance obligations under the Monitorship (unless otherwise agreed by Defendant, the Monitor, and the Commission staff).

The Monitor shall issue a written follow-up report within one-hundred twenty (120) calendar days of commencing the third follow-up review in the same fashion as set forth in Paragraph 16 with respect to the follow-up reviews and in accordance with the procedures for follow-up reports set forth in Paragraphs 20 through 27.

*Extensions of Time*

32.     Upon request by the Monitor or Defendant, the Commission staff may extend any procedural time period set forth above for good cause shown.

*Certificate of Completion*

33.     No later than seventy-five (75) calendar days before the completion of the term of the Monitorship, the Monitor shall certify, in writing, compliance with the undertakings set forth above. The certification shall identify the undertakings, provide written evidence of compliance in the form of a narrative, and be supported by exhibits sufficient to demonstrate compliance. The Commission staff may make reasonable requests for further evidence of compliance, and the Monitor agrees to provide such evidence.

*Confidentiality of Reports*

34.     The reports submitted by the Monitor and the periodic reviews and reports submitted by Defendant will likely include confidential financial, proprietary, competitive business or commercial information. Public disclosure of the reports could discourage cooperation, impede pending or potential government investigations or undermine the objective of the reporting requirement. For these reasons, among others, the reports and the contents thereof are intended to remain and shall remain non-public, except (i) pursuant to court order, (ii) as agreed to by the parties in writing, (iii) to the extent the Commission determines in its sole discretion that disclosure would be in furtherance of the Commission's discharge of its duties and responsibilities, or (iv) as is otherwise required by law.

*Address for All Written Communications and Reports*

35.     All reports or other written communications by the Monitor or Defendant directed to the Commission staff shall be transmitted by email and in hard copy to Finola

Manvelian, Assistant Director, Division of Enforcement, U.S. Securities and Exchange Commission, Los Angeles Regional Office, 444 South Flower St., Suite 900, Los Angeles, CA 90071, manvelianf@sec.gov.  A copy of the Certification of Completion and supporting materials shall also be transmitted to the Office of Chief Counsel of the Enforcement Division at U.S. Securities and Exchange Commission, 100 F Street, N .E., Washington, D.C. 20549.

36.     Defendant waives the entry of findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

37.     Defendant waives the right, if any, to a jury trial and to appeal from the entry of the Final Judgment.

38.     Defendant enters into this Consent voluntarily and represents that no threats, offers, promises, or inducements of any kind have been made by the Commission or any member, officer, employee, agent, or representative of the Commission to induce Defendant to enter into this Consent.

39.     Defendant agrees that this Consent shall be incorporated into the Final Judgment with the same force and effect as if fully set forth therein.

40.     Defendant will not oppose the enforcement of the Final Judgment on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure, and hereby waives any objection based thereon.

41.     Defendant waives service of the Final Judgment and agrees that entry of the Final Judgment by the Court and filing with the Clerk of the Court will constitute notice to Defendant of its terms and conditions.  Defendant further agrees to provide counsel for the Commission, within thirty (30) days after the Final Judgment is filed with the Clerk of the Court, with an affidavit or declaration stating that Defendant has received and read a copy of the Final Judgment.

42.     Consistent with 17 C.F.R. 202.5(f), this Consent resolves only the claims asserted against Defendant in this civil proceeding. Defendant acknowledges that no promise or representation has been made by the Commission or any member, officer, employee, agent, or

representative of the Commission with regard to any criminal liability that may have arisen or may arise from the facts underlying this action or immunity from any such criminal liability. Defendant waives any claim of Double Jeopardy based upon the settlement of this proceeding, including the imposition of any remedy or civil penalty herein. Defendant further acknowledges that the Court's entry of a permanent injunction may have collateral consequences under federal or state law and the rules and regulations of self-regulatory organizations, licensing boards, and other regulatory organizations. Such collateral consequences include, but are not limited to, a statutory disqualification with respect to membership or participation in, or association with a member of, a self-regulatory organization. This statutory disqualification has consequences that are separate from any sanction imposed in an administrative proceeding. In addition, in any disciplinary proceeding before the Commission based on the entry of the injunction in this action, Defendant understands that it shall not be permitted to contest the factual allegations of the Complaint in this action.

43.     Defendant understands and agrees to comply with the terms of 17 C.F.R. § 202.5(e), which provides in part that it is the Commission's policy "not to permit a defendant or respondent to consent to a judgment or order that imposes a sanction while denying the allegations in the complaint or order for proceedings." As part of Defendant's agreement to comply with the terms of Section 202.5(e), Defendant acknowledges the Deferred Prosecution Agreement and guilty plea for related conduct described in paragraph 2 above, and: (i) will not take any action or make or permit to be made any public statement denying, directly or indirectly, any allegation in the Complaint or creating the impression that the Complaint is without factual basis; (ii) will not make or permit to be made any public statement to the effect that Defendant does not admit the allegations of the Complaint, or that this Consent contains no admission of the allegations; and (iii) upon the filing of this Consent, Defendant hereby withdraws any papers filed in this action to the extent that they deny, directly or indirectly, any allegation in the Complaint.  If Defendant breaches this agreement, the Commission may petition the Court to vacate the Final Judgment and restore this action to its active docket.

13

Nothing in this paragraph affects Defendant's: (i) testimonial obligations; or (ii) right to take legal or factual positions in litigation or other legal proceedings in which the Commission is not a party.

44.     Defendant hereby waives any rights under the Equal Access to Justice Act, the Small Business Regulatory Enforcement Fairness Act of 1996, or any other provision of law to seek from the United States, or any agency, or any official of the United States acting in his or her official capacity, directly or indirectly, reimbursement of attorney's fees or other fees, expenses, or costs expended by Defendant to defend against this action. For these purposes, Defendant agrees that Defendant is not the prevailing party in this action since the parties have reached a good faith settlement.

45.     Defendant agrees that the Commission may present the Final Judgment to the Court for signature and entry without further notice.

46.     Defendant agrees that this Court shall retain jurisdiction over this matter for the purpose of enforcing the terms of the Final Judgment.

Dated: Nov 26, 2019                          Telefonaktiebolaget LM Ericsson


By: _____
        Xavier Dedullen

On ___26th___, __November 2019__, a person known to me, personally appeared before me and acknowledged executing the foregoing Consent with full authority to do so on behalf of Telefonaktiebolaget LM Ericsson.


_____
Notary Public

GRACE M. GONZALEZ
Notary Public, State of New York
No. 01GO4641391
Qualified in Bronx County
Commission Expires October 31, 2021

Commission Expires: October 31, 2021

14

Approved as to form:

Cheryl J. Scarboro, Esq.
Simpson Thacher & Bartlett LLP
900 G Street, NW
Washington, D.C. 20001


Attorney for Defendant